# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TEXARKANA DIVISION

| | | |
|---|---|---|
| DAVID TIJERINA | § | |
| v. | § | CIVIL ACTION NO. 5:16-cv-102 |
| DR. REGINALDO STANLEY, ET AL. | § | |

## ORDER ADOPTING REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

The Plaintiff David Tijerina, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. § 1983 complaining of violations of his constitutional rights. This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges. The named Defendants are: Dr. Reginaldo Stanley; Nurse Practitioner Jammie Barker; a John Doe defendant identified as the pharmacist at the Telford Unit; Physician's Assistant Steven Roberts; Pam Pace, the practice manager at the Coffield Unit; Dr. Paul Shrode, a physician at the Coffield Unit; and Cathy McPeak, identified as a grievance coordinator but in fact the practice manager at the Telford Unit.

The Magistrate Judge entered a Report and Recommendation on December 3, 2018 (Docket No. 79) recommending the case be dismissed with prejudice as frivolous for purposes of proceeding *in forma pauperis*. Plaintiff filed objections on December 26, 2018. The Court conducts the following *de novo* review.

**I. The Plaintiff's Complaint**

The Plaintiff's second amended complaint (Docket No. 53) is the operative pleading in the lawsuit. Plaintiff complains of the medical care he received between January, 2015 and December, 2017. He stated he complained of heartburn and blood in his stool in January of 2015, but only received Zantac until he collapsed in his cell and had to be taken to a free-world hospital. In

February of 2015, Nurse Practitioner Barker told him he had tested positive for a bacteria called H.pylori, and he was started on antibiotics which had adverse side effects. Later, a blood test showed he did not have H.pylori. Nonetheless, he was kept on the antibiotics for over two weeks.

Plaintiff asserts he was in severe distress and could not pass stool, and on February 20, 2015, Nurse Practitioner Barker ordered X-rays. According to Plaintiff, he was diagnosed with severe constipation and given medication for this condition. Plaintiff lost consciousness in his cell on March 7, 2015, and was taken to the infirmary on a gurney, where he was placed in an observation cell but not given any pain medication.

Plaintiff stated that on March 23, 2015, he received a medical lay-in and saw Nurse Practitioner Barker, who ordered more X-rays and said she would refer him to a gastrointestinal doctor in three months if his condition did not improve. He asked for pain medication and a faster referral but she refused.

Plaintiff stated that on May 12, 2015, he was transported to a free-world hospital, Wadley Regional Medical Center, where he was found to have developed irritable bowel syndrome. Bentyl was prescribed, but Plaintiff never received it, instead being given what he describes as a "less effective" medication called metoclopramide simply because it was cheaper. He saw Nurse Practitioner Barker three days later and she discontinued the metoclopramide and ordered other medications for him, but Plaintiff contends he never received them.

Plaintiff stated that on May 28, 2015, Dr. Stanley ordered lab work for him. On June 26, 2015, Plaintiff was called to the infirmary and asked why he had not left on the medical chain that morning, but he did not recall being notified of a medical chain. He was suffering severe abdominal pain and Nurse Practitioner Barker ordered him sent to a free-world hospital, where he was given morphine and a CT scan.

Plaintiff stated that a few days later, on June 29, 2015, he had a telemedicine appointment

with a doctor in Galveston, who told him the antibiotics he was taking were wrong and prescribed fiber laxatives and a medication called Prilosec. Plaintiff had an enema the next day, but it did not work and he had to have a bigger one.

Plaintiff stated that on August 5, 2015, Nurse Practitioner Barker denied telling him she was going to prescribe medication for him and refused to give him pain medication or a medically prescribed diet. On August 21, Plaintiff was seen by Dr. Larson, who performed an endoscopy and a colonoscopy. Plaintiff states Dr. Larson prescribed multivitamins, Caltrate and Miralax, but he did not get any of these until September 4, when another medical provider named Moreland ordered the Caltrate.

Plaintiff stated that on September 9, 2015, he saw Nurse Practitioner Barker, but she denied he had colon polyps and refused to order the multivitamins or Miralax or to give him any adequate pain medication. He asserted she made a false entry in his medical records stating that he refused treatment and signed a refusal of treatment form.

Plaintiff stated that on September 25, 2015, he saw Nurse Practitioner Barker after some delays. According to Plaintiff, she refused to provide any pain medication and stated she did not care if Plaintiff filed any more complaints against her. Plaintiff concedes Nurse Practitioner Barker did order another X-ray and then prescribed acidophilus and a pain medication called Tegretol, as well as a medication called magnesium citrate, which Plaintiff refused because it made him vomit. Plaintiff stated that on October 11, 2015, he was told the Tegretol had been discontinued because it conflicted with the acidophilus, even though he had never received either of them.

Plaintiff stated that a few weeks later, on November 6, 2015, he was sent to Hospital Galveston. He told the doctor the prison officials were refusing to give him Miralax, and the doctor said he would order it again.

According to Plaintiff, on November 18, 2015, Nurse Practitioner Barker told him that she

would order Miralax, but then denied he had colitis, gastroenteritis or colon polyps. An ultrasound on December 8 showed Plaintiff's spleen was enlarged. He asked for treatment in January of 2016, but was denied.

Plaintiff stated that several months later, in August of 2016, he saw Dr. Stanley, whom he says seemed disappointed to find Plaintiff's medical records showed gastroenteritis and colitis. He contends Dr. Stanley refused to treat these conditions or give him pain medication. Plaintiff stated Dr. Stanley described his enlarged spleen as "just a little swelling."

Plaintiff stated he also asked Dr. Stanley about his irritable bowel syndrome. Dr. Stanley told him he would have it for about seven years and then it would go away, which Plaintiff asserts is false. He complained about pain, vomiting, inability to pass stool and blood in his stool, but Dr. Stanley only gave him milk of magnesia and told him not to bother asking for pain medication. According to Plaintiff, when he asked for the acidophilus, Dr. Stanley said he was not doing any negotiating and had Plaintiff taken back to his cell by security.

Plaintiff stated that around September 23 or 24, 2016, it was determined he had a urinary tract infection and a kidney infection. A few days later, he told an officer he was throwing up blood and having severe chest pains. Nurse Practitioner Barker told him he had been checked from top to bottom and she would not send him to an outside hospital for treatment.

Plaintiff complained John Doe No. 1, apparently the pharmacist, interfered with his medical treatment by blocking approval of medications without legitimate reasons. He asserted Dr. Shrode has ignored his requests for care and told him the colonoscopy did not show colitis even though the doctor is aware of Plaintiff's medical records. Plaintiff further asserted that Dr. Shrode has falsified his medical records, pointing to an instance in which the doctor noted Plaintiff received pain medications, a medicine called simethicone and vitamin D at a visit when, in fact, Plaintiff had received none of those. Plaintiff stated many other medical providers also enter non-existent

medications in to his records. He claimed Practice Manager Pace is the supervisor of medical personnel at the Coffield Unit but took no corrective action and has falsified medical records to show non-existent appointments.

**II. The Martinez Report and the Report of the Magistrate Judge**

The Magistrate Judge ordered prison officials to provide a *Martinez* Report consisting of Plaintiff's medical, grievance and classification records, along with any other records, incident reports or investigations concerning his claims. *See Martinez v. Aaron*, 570 F.2d 317, 319 (10th Cir. 1978); *Parker v. Carpenter*, 978 F.2d 190, 191–92 n.2 (5th Cir. 1992). Plaintiff was provided with a copy of the Martinez Report, consisting of 3,616 total pages, and filed his second amended complaint in response.

After summarizing some 26 Step One and Step Two grievances filed by Plaintiff, the Magistrate Judge reviewed Plaintiff's extensive medical records. These records show Plaintiff was seen and treated by medical personnel on dozens of occasions, including trips to Wadley Regional Medical Center as well as Hospital Galveston. The Magistrate Judge observed Plaintiff has had numerous labs and tests done, including abdominal X-rays and a colonoscopy, of which the majority proved negative; however, the medical personnel have noted Plaintiff was simply unwilling to accept the results.

Plaintiff argued his medical records have been falsified, but the Magistrate Judge stated Plaintiff offered nothing to substantiate this claim. Although Plaintiff contended Nurse Practitioner Barker incorrectly diagnosed him with H.pylori, the Magistrate Judge determined Plaintiff failed to show deliberate indifference in this regard.

Plaintiff complained of an incident in which the medical department did not see him on January 28, 2015, but he was seen the next day and sent to Wadley Regional Medical Hospital, where his examination did not result in any significant findings. The Magistrate Judge stated

Plaintiff failed to show he suffered substantial harm as a result of the one-day delay in treatment. Although Plaintiff also complained about the practice managers, Defendants Pace and McPeak, the Magistrate Judge stated their roles are purely administrative and neither of them are medical providers or otherwise able to make medical decisions. He also complained about the pharmacist's failure to approve acidophilus, which is not a Texas Department of Criminal Justice Correctional Institution Divison ("TDCJ-CID") approved formulary medication, but the Magistrate Judge concluded that the fact the pharmacist refused to approve a non-formulary medication did not show deliberate indifference to Plaintiff's serious medical needs, and Plaintiff's disagreement with this decision likewise did not show deliberate indifference.

Plaintiff further complained he "has not received any medical treatment to date" and his complaints have been "untreated and ignored." The Magistrate Judge determined these allegations were belied by the extensive medical records which showed Plaintiff has been seen and treated repeatedly. His disagreement and dissatisfaction with the treatment provided does not show that he has been the victim of deliberate indifference to his serious medical needs. The Magistrate Judge therefore recommended Plaintiff's lawsuit be dismissed with prejudice as frivolous for purposes of proceeding *in forma pauperis*.

### III. The Plaintiff's Objections

Plaintiff's objections first complain the Court did not permit him to amend his complaint yet again. Docket No. 81 at 2–3. While trial courts should freely grant leave to amend, granting such leave is not automatic; rather, the district court may consider a variety of factors including undue delay, bad faith or dilatory motive, repeated failures to cure deficiencies by amendments previously allowed or undue prejudice to the opposing party and futility of the amendment. *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005). Plaintiff's proposed amended complaint was filed a year after the *Martinez* Report and some 10 months after the second amended complaint

which was designated as the operative pleading. Plaintiff has offered nothing to explain this lengthy delay, nor anything to suggest his requested amendment would not be futile.

Plaintiff states the primary difference between the operative pleading and the proposed amended complaint (Docket No. 78) was that the operative pleading did not adequately allege that the claimed deprivations of medical care were being carried out against other prisoners besides Plaintiff. Docket No. 81 at 2–3. However, such an allegation is irrelevant to the central question of whether Plaintiff was himself the victim of deliberate indifference to his serious medical needs.

Plaintiff further alleges the proposed amended complaint clarified the allegations against Practice Managers Pace and McPeak. *Id*. The proposed amended complaint does not list Practice Manager McPeak as a defendant at all and states Practice Manager Pace's duties and responsibilities include overseeing all nurses, pharmacists, practitioners and doctors at the Coffield Unit as their immediate supervisor. Docket No. 78. This is incorrect, as explained by the Magistrate Judge in the Report. Docket No. 79 at 30.

In granting leave to file the second amended complaint as the operative pleading, the Magistrate Judge stated "no further amendments or supplements shall be permitted unless upon a showing of exceptionally good cause." Docket No. 61 at 1. None of the reasons given by Plaintiff amount to exceptionally good cause. Plaintiff's objection on this point is without merit.

Next, Plaintiff contends the Magistrate Judge erred by not permitting him to conduct discovery. Docket No. 81 at 3–6. Although he received a copy of his medical records in the *Martinez* Report, he asserts there were other medical records which would have supported all of his allegations; however, he offers nothing to suggest that any such records actually exist. *See Parker v. Fortner*, 508 F. App'x 359, 2013 WL 264350 (5th Cir. 2013) (vague and speculative requests for discovery are not sufficient); *cf. Logan v. Madison Parish Detention Center*, Civil Action No. 3:12-cv-2221, 2013 WL 5781313 (W.D. La. Oct. 25, 2013) (stating when it comes to

discovery, speculation that there is more will not suffice; if the theoretical possibility that more documents exist sufficed to justify additional discovery, then discovery would never end; parties seeking to compel discovery must provide more than just a suspicion or hunch that additional documents exist which are responsive to the request), *citing Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. Jan. 3, 2008). Plaintiff's objection in this regard is without merit.

Plaintiff asserts the use of the *Martinez* Report is unconstitutional because it circumvents the normal rules of summary judgment and allows the defendants to prematurely present evidence which is considered as true and used to refute the plaintiff's allegations. Docket No. 81 at 3. The Fifth Circuit has upheld the use of *Martinez* Reports in cases involving claims of deliberate indifference to serious medical needs as a means by which to conduct a frivolousness screening under 28 U.S.C. § 1915(a). *Richie v. University of Texas Medical Branch Hospital*, 581 F. App'x 405 (5th Cir. 2014); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff was provided with a copy of the *Martinez* Report, including his medical records and grievances, and given an opportunity to respond. The Fifth Circuit has held that medical records of sick calls, examinations, diagnoses and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995). He has failed to show how the use of a *Martinez* Report, as approved by the Fifth Circuit, is unconstitutional. Plaintiff's objections on this point are without merit.

Next, Plaintiff contends there are disputed issues of fact because his allegations differ from what the medical records recount. *See* Docket No. 81 at 6–37. For example, he states his version of the facts was that X-rays ordered on March 23, 2015 showed abnormal amounts of stool and gas in his colon with phleboliths observed on his pelvis, while the *Martinez* Report states that these X-rays were normal. *Id.* at 8. According to the *Martinez* Report, the results of the March 23 X-ray stated "a copious amount of stool is present in the colon. The bowel gas pattern is nonobstructed.

No abnormal masses or calcifications are visualized. A few phleboliths are seen on the pelvis." Docket No. 48-10 at 95. The Magistrate Judge's Report stated when Plaintiff saw Nurse Practitioner Barker on March 23, "an examination showed a large quantity of stool in the upper quadrant," and she gave him a bottle of magnesium citrate to treat this condition. Plaintiff has not shown his asserted version of the facts in this instance differs from the *Martinez* Report or the Magistrate Judge's Report.

Likewise, Plaintiff states his version of the facts was that he began experiencing severe abdominal pain and vomiting on February 10, 2015, while he claims the *Martinez* Report stated he did not. Docket No. 81 at 7. The Magistrate Judge's Report states and the *Martinez* Report reflects Plaintiff had a gallbladder sonogram at Wadley Regional Medical Center on February 10, and this test proved negative. Docket No. 48-15 at 16. Plaintiff has not shown his version of the facts is inconsistent with the *Martinez* Report or the Magistrate Judge's Report.

Other examples given by Plaintiff of alleged variances include instances where his self-diagnosis of his medical condition differs from the diagnoses of medical professionals or where he believes test results have been falsified, despite not setting forth any facts to support this conclusion. *See* Docket No. 81 at 6-37. The fact that medical professionals may not believe a prisoner's self-diagnosis of his medical condition does not show deliberate indifference. *Norton*, 122 F.3d at 292; *see also Kayser v. Caspari*, 16 F.3d 280, 281 (8th Cir. 1994) (prisoner's self-diagnosis will not support a medical conclusion); *McClure v. Foster*, Civil Action No. 5:10-cv-78, 2011 WL 665819 (E.D. Tex. Jan. 7, 2011), *report adopted at* 2011 WL 941442 (E.D. Tex. Feb. 16, 2011), *aff'd* 465 F. App'x 373, 2012 WL 1059408 (5th Cir. 2012). Plaintiff's objection on this point is without merit.

Regarding Practice Managers McPeak and Pace, Plaintiff contends these two Defendants were the practice managers and supervisors of all the other defendants and were responsible for

ensuring their subordinate employees provided proper, timely and effective medical care. Docket No. 81 at 9–11. He also claims they were responsible for processing his grievances, were aware of the treatment deprivations during the time in question and were responsible for coordinating treatments. Plaintiff further asserts the practice managers allowed and directed their subordinates to display deliberate indifference to Plaintiff and other prisoners for years. *Id.*

The Magistrate Judge determined that the role of the practice managers is purely administrative, and neither McPeak nor Pace are medical providers or otherwise able to make medical decisions. *See Affidavit of Dr. Stephen Bowers, M.D.*, Docket No. 48-15 at 5; *Hunt v. Pierson*, Civil Action No. 6:15-cv-559, 2016 WL 1357913 (E.D. Tex., Jan. 14, 2016), *report adopted at* 2016 WL 1322233 (E.D. Tex. Apr. 4, 2016), *aff'd* 730 F. App'x 210, 2018 WL 1750600 (5th Cir. 2018), *citing Criollo v. Milton*, 414 F. App'x 719, 2011 WL 721502 (5th Cir. 2011) (affirming denial of claim against Practice Manager Pace because there was no showing she was involved in his medical care). The medical providers and nurses are not employees of the practice managers and the practice managers have no supervisory role or authority over the medical personnel. Plaintiff offered nothing to controvert this determination beyond his own conclusory allegations.

In addition, the practice managers' processing of Plaintiff's grievances does not impute any type of liability to them. *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005) (no liberty interest in prison grievance procedures); *see also Whitlock v. Merchant*, Civil Action No. 5:14-cv-119, 2015 WL 5909776 (E.D. Tex. Sept. 21, 2015) (mere fact of receipt of grievances does not show personal involvement in a constitutional deprivation), *citing Cervantes v. Sanders*, Civil Action No. 2:98-cv-187, 1998 WL 401628 (N.D. Tex. July 13, 1998) (reading or responding to prisoner's grievance does not show personal involvement by prison official); *Amir-Sharif v. Valdez*, Civil Action No. 3:06-cv-2258, 2007 WL 1791266 (N.D. Tex. June 6, 2007) (failure to take

corrective action in response to a grievance does not rise to the level of personal involvement). Plaintiff's objection on this point is without merit.

Turning to the pharmacist, identified only as "John Doe," Plaintiff contends John Doe disobeyed prescription orders made by the physician at Wadley Regional Hospital. Docket No. 81 at 11–12. However, under TDCJ policy, outside physicians can only make recommendations, not orders. *See, e.g.*, *Burgett v. Fontenot*, Civil Action No. 4:10-cv-162, 2010 WL 4394033 (S.D. Tex. Oct. 29, 2010); *Fenlon v. Quarterman*, Civil Action No. 6:07-cv-532, 2008 WL 637627 (E.D. Tex. Mar. 5, 2008), *aff'd* 350 F. App'x 931, 2009 WL 3444778 (5th Cir. 2009), *cert. dism'd*, 560 U.S. 962 (2010). This objection is without merit.

Plaintiff speculates if John Doe had disobeyed an order from Dr. Stanley to discontinue the antibiotics and gave them to him for an additional five days, then John Doe would have caused the injuries associated with taking those unneeded antibiotics. This speculation does not show John Doe was deliberately indifferent to a serious medical need.

Next, Plaintiff contends the Magistrate Judge erred in determining the failure to approve a non-formulary medication was not deliberate indifference. Docket No. 81 at 12–13. He asserts any medication recommended by a physician is the assumed treatment needed, and neither TDCJ nor the pharmacist participated in the decision. He claims the pharmacist's only job is to fill the physician's order, nothing more, and contends TDCJ policy regarding formulary or non-formulary medications is not the controlling authority, or else the policy must be unconstitutional.

According to evidence offered in *Davis v. Lithicum*, the prescribing of medications in the correctional managed health care system is done using medications approved for the correctional managed care formulary; however, non-formulary requests may be submitted by the unit medical provider as the provider deems appropriate. Civil Action No. 4:11-cv-2755, 2013 WL 2427722 (S.D. Tex. June 3, 2013), *aff'd* 574 F. App'x 379, 2014 WL 2884696 (5th Cir. 2014). These requests

must then be approved by the assigned clinical pharmacist who reviews these requests to confirm that the drug is necessary to the treatment plan and that no acceptable substitute is available on the formulary.

Plaintiff's description of the pharmacist's duties as solely filling the physician's orders is incorrect. Even assuming John Doe was the same assigned clinical pharmacist who declined to approve the medication, Plaintiff has failed to show that this decision amounted to deliberate indifference to his serious medical needs, rather than negligence or even malpractice. *See Domino v. TDCJ-ID*, 239 F.3d 752, 756 (5th Cir. 2001) (deliberate indifference means conduct clearly evincing a wanton disregard for a serious medical need); *Graves v. Hampton*, 1 F.3d 315, 319–20 (5th Cir. 1993) (negligent or mistaken treatment is not tantamount to deliberate indifference); *Welch v. Revell*, Civil Action No. 2:10-cv-109, 2011 WL 2455715 (N.D. Tex. May 20, 2011), *Report adopted at* 2011 WL 2455661 (N.D. Tex. June 20, 2011) (failure to approve a formulary medication is not itself deliberate indifference). Plaintiff's objection on this point is without merit.

Finally, Plaintiff challenges the Magistrate Judge's conclusion that he was not the victim of deliberate indifference. However, Plaintiff's objections make clear that he is simply dissatisfied with the medical care he received and that he believes it should have been more effective. He refers to numerous tests and treatments he received while arguing he has not received any medical care and that his complaints have been untreated and ignored. The Magistrate Judge correctly determined these claims are belied by the extensive medical record which shows Plaintiff has been seen and treated repeatedly. *Norton*, 122 F.3d at 291–92 (prisoner did not state a claim for deliberate indifference where there was extensive evidence in the record that prisoner was afforded a considerable amount of care and attention). Plaintiff's objections are without merit.

**IV. Conclusion**

The Court has conducted a careful *de novo* review of the objected-to portions of the Magistrate

Judge's proposed findings and recommendations. *See* 28 U.S.C. § 636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined the Report of the Magistrate Judge is correct and the Plaintiff's objections are without merit. It is accordingly

**ORDERED** that the Plaintiff's objections are **OVERRULED** and the Report of the Magistrate Judge (Docket No. 79) is **ADOPTED** as the opinion of the District Court. It is further

**ORDERED** that the above-styled civil action is **DISMISSED WITH PREJUDICE** as frivolous for purposes of proceeding *in forma pauperis*. It is further

**ORDERED** that any and all motions which may be pending in this civil action are hereby **DENIED**.

**So ORDERED and SIGNED this 28th day of March, 2019.**

ROBERT W. SCHROEDER III
UNITED STATES DISTRICT JUDGE